**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TENNSCO CORPORATION, Respondent.**

**No. 15659.**

United States Court of Appeals
Sixth Circuit.

Dec. 14, 1964.

Marion Griffin, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, James C. Paras, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Wilson Sims, Nashville, Tenn. (Bass, Berry & Sims, of counsel), for respondent.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and PRETTYMAN, Senior Circuit Judge.*

PRETTYMAN, Senior Circuit Judge:

The National Labor Relations Board petitions for enforcement of an order which directed our respondent, Tennsco Corporation, to cease and desist from certain alleged practices and to employ with back pay two persons allegedly illegally denied employment because of union activities.

Prior to 1961 a company named K. F. Cline Co. manufactured certain metal products. Its employees were represented by a union[1] as their certified agent. By virtue of a voluntary check-off the

---

* Sitting by designation from the District of Columbia Circuit.

1. Local 160, Stove Mounters' International Union of North America, AFL–CIO.

company knew that all these employees were union members. In the latter part of 1961 the company, by reason of business conditions, reduced its working force and then shut down the plant entirely. A man named Speyer, who had been a competitor, purchased the plant and machinery, incorporated respondent Tennsco, and began business at the former Cline site. He employed the former general manager of Cline (one Liebtag), who in turn hired as supervisory personnel the former Cline superintendent and foremen. Prior to its decline Cline had had a normal working force of between fifty and sixty. Tennsco had twenty employees.[2] Of these employees fourteen had been employed by Cline and were members of the union. Thus Tennsco employed six who had not worked for Cline and who were not union members.

Among the 36 to 46 former Cline employees who were not hired by Tennsco were the president of the union (one Sullivan) and its secretary (one Greer). The union filed charges against Tennsco, and a complaint was issued and hearings held before an Examiner. He made findings, reached conclusions and issued an intermediate report and a recommended

order. The Board modified the order and issued it.

The complaint charged violations of Sections 8(a) (1), 8(a) (3), and 8(a) (5) of the Act.[3] The Board found violations of Sections 8(a) (1) and 8(a) (3). It based these conclusions upon findings that Tennsco had threatened employees and applicants for employment by asserting that it would shut down rather than recognize a union, and had refused to employ Sullivan and Greer because of their union activities.

The first point raised by this petition for enforcement concerns a problem of pleading and procedure. The complaint charged that Tennsco had failed and refused to hire 66 named people[4] because they had joined or assisted the union, and that the company did so for the purpose of avoiding its obligation to recognize the union. When the hearing began, the General Counsel for the Board, who is the prosecuting attorney in these cases, made a brief opening statement in which, *inter alia*, he said he would prove that the employees "hired off the street" by Tennsco were hired in preference to former employees of Cline in violation of Section 8(a) (3) of the Act.[5] The Ex-

---

2. This is the number it had hired by August, 1962, the time of the hearing in this matter.

3. National Labor Relations Act, 49 Stat. 452 (1935), as amended, 29 U.S.C. § 158 (a) (1) (1958), 29 U.S.C. §§ 158(a) (3), 158(a) (5) (Supp. V, 1964).

4. The initial complaint listed 65 names. By oral amendment at the start of the hearing one more name (that of Greer) was added to the list.

5. This section reads as follows:
"(a) It shall be an unfair labor practice for an employer—
　＊　＊　＊　＊　＊
"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subsection, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as

an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 9(a), in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 9(e) within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided, further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reason-

aminer said he did not quite understand "this part about the 8(a) (3)." Counsel for Tennsco at once stated that he did not understand "the 8(3)" and described with some particularity his difficulty. He said he would like to ask "where the 8(a) (3) violation is." He asked, in effect, whether it was that the company selected the wrong members of the union for employment, or whether they should have employed only the individuals listed, or whether when they hired six non-union people they should have hired union members as listed; "and if we did discriminate, whom did we discriminate against." The prosecutor said: "I don't think it is necessary at this time to give the defendant any more information." The Examiner commented that he shared some of the questions about the pleadings. The hearing then proceeded.

The difficulty stemmed from the complaint. From it and Government exhibits it appeared (1) discrimination against 66 named persons was charged, (2) Tennsco had twenty employees, (3) of the twenty Tennsco employees fourteen had been Cline employees and members of the union, and (4) eight of the persons employed by Tennsco and formerly employed by Cline were listed among the 66 discriminatees.

The inquiry of counsel for Tennsco, shared by the Examiner, was a real one. A charge that Tennsco discriminated generally against all union members or all former Cline employees would pose an issue of company policy. The evidence pro and con would consist of basic attitudes, general declarations and past history concerning any and all employees. A charge that the company had discriminated against certain named persons individually (some or all of the 66 named) would pose quite a different question. The individuals would have to be named, and particularized acts, or threats, aimed at the individual or individuals named would constitute the perti-

nent evidence. Of course either or both of these practices or actions, general or individualized, might constitute a violation of the Act, and that is not our problem. Our problem is one of pleading and procedure.

Other features of this complaint were also obscure. Since Tennsco had hired only six non-union members, its discrimination, if on an individualized basis, must have been in respect to these six hirings. On that basis, which of the 66 were the six discriminatees? That dilemma indicates rather clearly that the discrimination contemplated by the complaint was a general anti-union bias and discrimination. The fact that the complaint charged discrimination against persons actually already hired by Tennsco also indicated that the gravamen of the alleged offense was a general mass discrimination against all union members. If the offense charged and to be tried was indeed an alleged general anti-union discrimination, this complaint posed for decision a problem as to Tennsco's obligation in hiring. Cline had had fifty or sixty union-member employees. Tennsco had only twenty employees. Was Tennsco obligated to hire only union members? It hired fourteen union members. Was it obligated to complete its roster with union members? This was a new corporation. It had as yet no contract with a union. Would not a compulsory all-union hiring have been an illegal closed shop? None of the problems thus indicated would arise if the complaint meant to charge individual discrimination against certain individuals not hired. Thus the problem of proof faced by counsel for Tennsco at the outset of his case was a real one.

When the prosecutor rested his case the following occurred:

"Mr. Sims [counsel for Tennsco]: May I ask if General Counsel is prepared to answer the question propounded at the beginning of the

able grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the

initiation fees uniformly required as a condition of acquiring or retaining membership; * * *."

hearing about the 8(3) charges at this time before we proceed, about what he is trying to do with the 8(3) charges.

"Mr. Statham [the prosecutor]: No, I am not willing to answer any questions you have in that regard."

The queries of counsel for Tennsco and of the Examiner were renewed at the end of the hearing, and the prosecutor said:

"Mr. Statham: Inasmuch as Mr. Sims has expressed his desire for an expression on the theory, and the Trial Examiner has equally done so, both on the record and off the record, I, at this time will explain in general our theory,

\* \* \* \* \* \*

"Now, in regard to the 8(a) (3) violation. We think that the record establishes—

"Trial Examiner: (Interrupting) Do you think the company should have forty more employees than it does now?

"Mr. Statham: No.

"Trial Examiner: Isn't that part of your complaint?

"Mr. Statham: No.

"One statement we are making now is that we can't go through and say what employees should have been hired, so, therefore, we are alleging all of these people. This is one asset [sic] to the case. We are alleging and listing all of these people as discriminatees. We can't go through and say Eugene Garton, for example, should have been hired."

This colloquy shows that the Examiner was still perplexed about the offense charged. And it also shows that the

prosecutor, at the end of the hearing, said he could not say what persons should have been hired, or that a named person should have been hired. But the offense finally found by the Board, as we shall see in a moment, was upon the basis that two certain persons, Sullivan and Greer, should have been hired. This is precisely what the prosecutor said, at that point, he could not show.

The Board sustained the Examiner in holding there was no "mass discrimination," that is, no discrimination against union members generally, but that there was proven discrimination against Sullivan and Greer. Tennsco says the latter issue was never raised and never tried; it never had an opportunity to defend against that charge.

█ It is well established, specifically by the statute,[6] by the case law,[7] and by the principles of fundamental fairness that one cannot be found guilty of an offense not encompassed by the complaint or of which he had no fair notice. The Supreme Court has affirmed this rule but has delineated its limits.[8] In the Mackay case the contention was made that the respondent was denied a hearing with respect to the offense found by the Board. The Court rejected the contention, saying: " \* \* \* we find from the record that it understood the issue and was afforded full opportunity to justify the action of its officers as innocent rather than discriminatory."[9] So we measure our present problem by that standard.

█ Certainly it is amply clear that Tennsco had no notice from the complaint itself that the General Counsel sought to prove discrimination against two, and only two, from among the 66 listed in the

---

6. The statute provides that "[p]ersons entitled to notice of an agency hearing shall be timely informed of \* \* \* (3) the matters of fact and law asserted." Administrative Procedure Act, 60 Stat. 239 (1946), 5 U.S.C. § 1004(a).

7. NLRB v. Johnson, 322 F.2d 216 (6th Cir. 1963), cert. denied, 376 U.S. 951, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964), and cases cited by the Sixth Circuit;

Bakery Wagon Drivers & Salesmen, Local Union No. 484 v. NLRB, 116 U.S.App. D.C. 87, 90, 321 F.2d 353, 356 (1963), and cases there cited.

8. National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938).

9. Id. at 350, 58 S.Ct. at 913.

complaint. And, moreover, the General Counsel said, in the statement last-quoted above, that he could not go through the list and say that a particular one of them should have been hired. Tennsco was successful in establishing that it did not indulge in mass discrimination. Both the Examiner and the Board so held. We think Tennsco was entitled to a specification, if not in the complaint at least at some point prior to the close of the hearing, to the effect that the General Counsel claimed discrimination in respect to two named former employees of Cline (Sullivan and Greer).

The Board says that Tennsco could and should have gleaned from the testimony as it went into the record that Sullivan and Greer were the specific targets of the mass allegation in respect to the 66 alleged discriminatees. But it seems to us if that were so the General Counsel should have said so when he was questioned by the Examiner and by counsel for Tennsco. It seems to us that the statement by the General Counsel at the end of the hearing negatived any necessity for Tennsco to fathom the purport of the testimony. This was not an investigation or a rule-making. This was an adjudicatory proceeding, where a company was charged with a violation of law and the statute requires a formal complaint, a hearing, and a decision with findings on an open record.[10] The defendant repeatedly asked for clarification of the issue it faced; the hearing officer was perplexed about it; and the responses of the prosecutor tended to indicate that the offense he had in mind was not the one ultimately found but was another different one. We think Tennsco, under the circumstances revealed by this record, was entitled to a clear statement of the Government's theory of the case, and the offense, if any, ultimately found must have been within the fair bounds of that statement.

We also think the revelations of the testimony as to the scope and target of the hearing were not as obvious as the Board would have us believe. The testimony as to Sullivan was brief, and the conclusion as to him was drawn from a mention of his name by Liebtag, the general manager, coupled with a reference to "a man from Nashville" and the well-known antipathy of Speyer toward unions. In respect to Greer the critical identification was even less clear. The conclusion as to him rests largely upon the fact that Tennsco hired a younger, inexperienced painter instead of Greer, who was older and experienced. The finding of discrimination as to Sullivan might well be sustained on this record as within the broad power of the Board to draw inferences from evidence. And the same might be true as to Greer, although less clearly so. But the question before us is whether Tennsco had fair notice of such issues. We think it did not.

It might be said, we suppose, that when Tennsco learned after the close of the hearing, perhaps from proposed findings and conclusions filed by the prosecutor, what the offense was, it could have moved for reopening. But a reopening is within the discretion of the Board and can be had only with permission. The right of a defendant to know the issues in an adjudicatory proceeding adheres to a part of the proceeding in which it is a right and not a matter of grace.

We deny enforcement of the order of the Board, on the ground that the record does not disclose that Tennsco understood the charge of discrimination to be aimed at Sullivan and Greer as individuals from among the 66 named in the complaint, and because Tennsco was not afforded full opportunity to justify its actions as to those two specifically.

Petition denied.

10.  61 Stat. 146 (1917), as amended, 29 U.S.C. § 160(a), (b), (c).