**UNITED STATES of America**

v.

**John M. HARPER.**

**Civ. A. No. 71–2850–W.**

United States District Court,
D. Massachusetts.

Dec. 8, 1971.

Order Feb. 4, 1972.

James N. Gabriel, U. S. Atty., Wayne B. Hollingsworth, Asst. U. S. Atty., for plaintiff.

Robert M. Murphy, Boston, Mass., for plaintiff.

## OPINION

WYZANSKI, District Judge.

This is an action brought by the United States to obtain a mandatory injunction requiring Harper to surrender any airman certificate and any airman medical certificate now held by him. Jurisdiction is claimed under 49 U.S.C. § 1487(a) and 28 U.S.C. § 1345.

The Government's complaint proceeds on the basis that the Federal Aviation Administration, acting by an officer to whom authority was properly delegated, issued, pursuant to 49 U.S.C. §§ 1429 and 1485(a), a valid order to Harper directing him to surrender such certificates, that Harper has failed to comply with the order as required by 49 U.S.C. § 1485(c), and that this court, by virtue of 49 U.S.C. § 1487(a), has jurisdiction

to enforce obedience to the administrative order.

On the Government's motion for immediate injunctive relief, this court held a hearing December 6, 1971. Without objection five exhibits were introduced at that hearing and both parties then rested. They agreed that this was all the evidence in the case, and that the court should enter a final judgment without any further hearing.

The administrative order sought to be enforced is said to be authorized by § 609 of the Federal Aviation Act of 1958, 72 Stat. 779, 49 U.S.C. § 1429 which, so far as relevant provides that:

"The Administrator may, from time to time * * * reexamine any civil airman. If, as a result of any such * * * reexamination, or if, as a result of any other investigation made by the Administrator, he determines that safety in air commerce or air transportation and the public interest requires, the Administrator may issue an order amending, modifying, suspending, or revoking, in whole or in part, any type certificate, production certificate, airworthiness certificate, airman certificate, air carrier operating certificate, air navigation facility certificate, or air agency certificate. Prior to amending, modifying, suspending, or revoking any of the foregoing certificates, the Administrator shall advise the holder thereof as to any charges or other reasons relied upon by the Administrator for his proposed action and, except in cases of emergency, shall provide the holder of such a certificate an opportunity to answer any charges and be heard as to why such certificate should not be amended, modified, suspended, or revoked. Any person whose certificate is affected by such an order of the Administrator under this section may appeal the Administrator's order to the Board and the Board may, after notice and hearing, amend, modify, or reverse the Administrator's order if it finds that safety in air commerce or air transportation and the public interest do not require affirmation of the Administrator's order. In the conduct of its hearings the Board shall not be bound by findings of fact of the Administrator. The filing of an appeal with the Board shall stay the effectiveness of the Administrator's order unless the Administrator advises the Board that an emergency exists and safety in air commerce or air transportation requires the immediate effectiveness of his order, in which event the order shall remain effective and the Board shall finally dispose of the appeal within sixty days after being so advised by the Administrator. The person substantially affected by the Board's order may obtain judicial review of said order under the provisions of section 1486 of this title, and the Administrator shall be made a party to such proceedings."

November 8, 1971, Markotic, Acting Chief, Special Projects and Appellate Branch, of the Federal Aviation Administration, Department of Transportation, issued an "Emergency Order of Revocation" addressed to Harper. The text of the order commences with 26 numbered paragraphs said to be "based on reports of investigation." The order then concludes as follows:

"By reason of the foregoing, the Administrator finds that safety in air commerce or air transportation and the public interest require the revocation of any airman certificate and any airman medical certificate held by you. Moreover, the Administrator finds that an emergency exists and safety in air commerce or air transportation and the public interest require the immediate effectiveness of this order.

NOW, THEREFORE, IT IS ORDERED, pursuant to the authority contained in Sections 609 and 1005(a) of the Federal Aviation Act of 1958,

as amended, that the second class airman medical certificate issued to you on 31 May 1971 and any other airman medical certificate in your possession, your Airline Transport Pilot Certificate No. 48431, your Mechanic Certificate No. M–16488, your Ground Instructor Certificate No. 867–2–40, and any other airman certificate held by you be and hereby are revoked on an emergency basis, said revocation to be effective as of the date of this order. You are directed to surrender immediately the revoked certificates by mailing them to Matthew Z. Markotic, Acting Chief, Special Projects and Appellate Branch, Federal Aviation Administration, Office of the General Counsel, 800 Independence Ave. S. W., Washington, D. C. 20591."

■ The court assumes, as indeed the parties do, and as Exhibit 3 indicates, that the Administrator had delegated to Markotic the power to issue the order here sought to be enforced. But the critical question is whether, it being transparent that Markotic issued the order without giving Harper, as holder of certificates covered by the order, an opportunity to answer any charges and be heard as to why such certificate should not be revoked, and without giving him an opportunity to challenge the evidence turned up by Markotic in his investigation or to offer his own evidence, an enforcement of the order would deprive Harper of the due process of law guaranteed by the Fifth Amendment.

The Government correctly points out that § 609 of the Federal Aviation Act of 1958 authorizes the issuance of a revocation order without giving the respondent an opportunity to be heard in the event of an emergency. But this merely opens the question as to whether as here applied the statute is ʿrepugnant to the due process clause.

We may assume, without deciding the point, that under some circumstances there would be no constitutional objection to that aspect of 49 U.S.C. § 1429 which authorizes the Administrator in an emergency without any hearing to suspend a certificate, and we may further assume that there would be no constitutional objection to the use, as an ancillary procedural device to make effective the temporary suspension, of a requirement that the holder surrender the certificate for the period of the suspension. Such a suspension order might be regarded as analogous to a judicial temporary restraining order issued *ex parte* in an emergency. See F.R.Civ.P. 65(b). Its justification would be that the forseeable immediate risks of irreparable *injury to the public from continued operation by the certificate holder in the period before the Administrator could afford an opportunity to be heard, make findings of fact, and issue an order based thereon, outweighed the holder's interest in an opportunity to be heard forthwith.*

But a prolonged suspension without an opportunity to be heard or a permanent revocation *without an opportunity to be heard raises different issues.* See Gellhorn and Byse, Administrative Law, Cases and Comments (1954) 774.

■ Insofar as 49 U.S.C. § 1429 purports to authorize a permanent revocation of a certificate without giving the holder an opportunity to be heard, that statutory section deprives the holder of due process of law guaranteed by the Fifth Amendment. The right of a person to be heard before he is deprived of his property by governmental action is the most elementary, fundamental, and comprehensive of the rights guaranteed by the due process clause of the Fifth Amendment. Murray's Lessee v. Hoboken Land Improvement Co., 59 U.S. 272, 280, 15 L.Ed. 372 (1856); Pennsylvania Gas and Water Co. v. Federal Power Commission, 138 U.S.App.D.C. 298, 427 F.2d 568, 577 (D.C.Cir., 1970); National Labor Relations Board v. Tennsco Corporation, 339 F.2d 396 (6th Cir., 1964). Such a guarantee may be validly limited only under the most compelling

circumstances and then generally only for the briefest of periods. Here no such compelling circumstances exist. Every foreseeable risk to the public or the government or indeed anyone can be adequately guarded against by a temporary suspension and surrender order issued without a hearing and valid only for a short time, followed by a plenary hearing with respect to a permanent suspension or revocation order.

Because 49 U.S.C. § 1429 as here applied and the order of Markotic issued November 8, 1971 which commanded that Harper, on the basis of the invalid revocation of his certificates, should surrender those certificates deprive Harper of his rights under the Fifth Amendment the court refuses enforcement of that order and dismisses the complaint.

Nothing herein deals with any civil or criminal liability Harper may be subject to under other statutory provisions or under contempt orders heretofore issued by this court. Nor does this opinion foreclose the FAA from proceeding to issue a temporary suspension and surrender order.

Complaint dismissed.

### ORDER

Plaintiff's January 26 application for stay and injunction pending appeal is *denied.* See Groppi v. Leslie, 404 U.S. ——, p. ——, 92 S.Ct. 582, 586, 30 L.Ed.2d 632, 1972, and cases there cited.[1]

---

[1]. "Indeed, we have stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are 'basic in our system of jurisprudence.' In re Oliver, 333 U.S. 257, 273, [68 S.Ct. 499, 92 L.Ed.2d 682] (1948). See, e. g., Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 143, 164–165, 171–172, 178, 185, [71 S.Ct. 624, 95 L.Ed. 817] (1951) (concurring opinions of Black, Frankfurter, Douglas, and Jackson, JJ.); Cole v. Arkansas, 333 U.S. 196, 201, [68 S.Ct. 514, 92 L.Ed. 644] (1948). We have emphasized this fundamental principle where rights of less standing than personal liberty were at stake. E. g., Sniadach v. Family Finance Corp., 395 U.S. 337, [89 S.Ct. 1820, 23 L.Ed.2d 349] (1969); Morgan v. United States, 304 U.S. 1, 18, [58 S.Ct. 773, 82 L.Ed. 1129] (1938); Grannis v. Ordean, 234 U.S. 385, 394, [34 S.Ct. 779, 58 L.Ed. 1363] (1914). In Mullane v. Central Hanover Trust Co., 339 U.S. 306, [70 S.Ct. 652, 94 L.Ed. 865] (1950), the Court stated:

'Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.' 339 U.S., at 313, [70 S.Ct., at 656]."